UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

|  |  |  |
|---|---|---|
| IN RE MOTION TO QUASH SUBPOENA | ) ) ) ) ) | CAUSE NO. 1:14-mc-71-WTL-TAB |

## ENTRY ON PETITIONER'S MOTION TO QUASH

This cause is before the Court on the Petitioner's motion to quash subpoena (dkt. no. 3). The subpoena in this cause was served on Eli Lilly and Company ("Lilly") by Guoqing Cao and Shuyu Li ("the Defendants"), former Lilly employees who are currently charged in a criminal matter before this Court. *See* Cause No. 1:13-cr-150-WTL-TAB. The motion has been fully briefed by Lilly, the Defendants, and the Government. The Court now rules as follows.

### I.  BRIEF BACKGROUND

Pursuant to a superseding indictment, on August 14, 2013, the Defendants were charged with multiple counts of theft of trade secrets and one count of conspiracy to commit theft of trade secrets in violation of 18 U.S.C. § 1832. On March 12, 2014, the Government filed a second superseding indictment ("SSI") that changed the nature of the charges brought against the Defendants. Now, the Defendants face one count each of wire fraud, aiding and abetting, and conspiracy to commit wire fraud in violation of 18 U.S.C. §§ 1343, 2, and 1349.

Since the Defendants have been charged, the Defendants and the Government have worked together and with the Court through the discovery process. On May 19, 2014, this Court held a discovery hearing; at the hearing, and in the written entry that followed, the Court approved the Defendants' request to serve a subpoena on Lilly. The Defendants did so on May 19, 2014.

Lilly objected to the subpoena, and the Defendants and Lilly attempted to resolve their disputes in June 2014. Unfortunately, not all disputes were resolved, and Lilly filed this motion to quash on July 7, 2014.

## II.     DISCUSSION

In a federal criminal case, the parties are entitled to limited reciprocal discovery. *See, e.g.*, Fed. R. Crim. P. 16. In the underlying criminal matter, the Government has produced much discovery to the Defendants pursuant to Rule 16. Nevertheless, the Defendants sought to obtain additional discoverable material from Lilly. The Defendants served the subpoena on Lilly pursuant to Federal Rule of Criminal Procedure 17 which provides, in relevant part, the following:

> (c) Producing Documents and Objects.
>
> > (1) In General. A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.
> >
> > (2) Quashing or Modifying the Subpoena. On motion made promptly, the court may quash or modify the subpoena if compliance would be unreasonable or oppressive.

Fed. R. Crim. P. 17.

In *United States v. Nixon*, 418 U.S. 683 (1974), the Supreme Court delineated the following rule which guides this Court's analysis of the subpoena:

> [I]n order to require production prior to trial, the moving party must show: (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.'

> Against this background, the [moving party], in order to carry his burden, must clear three hurdles: (1) relevancy; (2) admissibility; (3) specificity.

*Id*. at 699-700.[1] With this background in mind, the Court turns to the instant motion.

Lilly seeks to have the subpoena "quashed in its entirety because it is categorically unreasonable and oppressive." Lilly Reply at 13. The Defendants seek to have the entire subpoena upheld, and they have submitted justifications for each of their requests in the 26-page subpoena. In reviewing the subpoena, it is true that many of the requests must be quashed for various reasons; however, this is certainly not true of all requests in the 26-page document. Accordingly, the Court will address the subpoena request-by-request in order to determine whether the items need to be produced by Lilly. The Court will note which requests should be quashed and which requests are appropriate. For some requests, however, the Court would like more information in order to make that determination. Accordingly, a conference shall be held on **Friday, September 19, 2014, at 9:00 a.m. in Courtroom 202 of the Birch Bayh Federal Building & United States Courthouse, 46 E. Ohio Street, Indianapolis, Indiana.** The parties should be prepared to address each request listed below for which the Court notes it needs more information. Prior to this conference, the parties should attempt to resolve the outstanding requests amongst themselves.

---

[1] The Defendants argue that the *Nixon* standard has been questioned by other lower courts as to its applicability to Rule 17(c) subpoenas. However, they then note that "the Court need not resolve whether the multipart showing . . . must be met here, because the defendants have met the higher standard, even assuming its applicability." Defs.' Br. at 7. They also acknowledge that the Seventh Circuit still utilizes the *Nixon* standard. *See United States v. Buske*, No. 09-cr-65, 2012 WL 5497848, at *2 n.2 (E.D. Wis. Nov. 13, 2012) (noting that despite the defendant's argument to the contrary, "the Seventh Circuit has adopted the *Nixon* test in this context [and] the motions should be considered under the *Nixon/Tokash* standards").

Before turning to the subpoena itself, the Court addresses two other issues. After receiving the subpoena, Lilly provided the Defendants with a document outlining "responsive documents previously produced." Accordingly, it argues that certain requests made in the subpoena are moot, as Lilly has provided the Government—who in turn has or will provide to the Defendants—the material sought. *See* dkt. no. 3-2. The Defendants argue that this assertion is incorrect, noting that the production contains "blank documents; non-responsive documents; and disaggregated, or broken up, 'pdf' versions of spreadsheets. . . ."[2] Defs.' Br. at 12. The Court is confident that the parties can resolve those disputes without Court intervention.[3] If not, they may bring this to the Court's attention at the above-mentioned conference.

Similarly, Lilly provided the Defendants with a document outlining "responsive documents in production cue." This document outlines certain discovery that is forthcoming; these were items that Lilly was already planning on producing to the Government pursuant to this Court's discovery order. This Entry also does not address those requests; the Court is confident the Defendants will indeed obtain the discovery listed in the document. If not, the Defendants should bring this to the Court's attention at the conference, after attempting to resolve their disputes with Lilly.

Finally, the Court needs to address the date ranges contained in the subpoena. As Lilly indicates, many of the requests seek records going back to January 1, 2006; this is the same date that the Court has already addressed—with respect to emails—at an earlier hearing. As was the case with the emails, the Defendants do not provide a sufficient reason for the relevancy of

---

[2] The Defendants only identify eight requests that they argue Lilly has, in fact, not already complied with. This is classified as a "sample," however, so the list may not be exhaustive.

[3] In fact, Lilly notes that it "will continue to work with defense counsel to resolve such issues." Lilly Reply at 9.

records dating back to the year 2006. Accordingly, for certain requests noted below, the Court has changed the date range to correspond with its earlier order.

With these preliminary issues somewhat addressed, the Court now turns to the subpoena itself.[4]

### A. Interaction between the government and Eli Lilly relating to allegations (A1-A11)

The Defendants note that these requests "seek to determine Lilly's role in the radical shifts in prosecutive theory in this case . . ." Defs.' Br. at 33. Lilly argues that these requests do not meet the *Nixon* standard because they lack specificity. The Court agrees. The Defendants themselves essentially admit that they are on a fishing expedition: "We *believe* that Lilly, for improper purposes, persuaded the Government to charge, arrest, and detain two former employees on trumped up 'trade secret' evidence, easily contradicted. We *believe* the Government was at best gullible and guilty of poor investigative technique in accepting whole-cloth what was sold by Lilly on the flimsiest of bases." *Id*. at 34 (emphasis added). Rule 17(c) subpoenas "must be made in good faith and [are] not intended [to be] a general 'fishing expedition.'" *United States v. Tokash*, 282 F.3d 962, 971 (7th Cir. 2002). The Defendants have not cleared the *Nixon* hurdles with respect to this category of requests. Accordingly, Lilly's motion to quash these requests is **GRANTED**.

### B. Records of Eli Lilly and Company specific to defendants and colleagues (B1-B34)

This category of requests are for certain business records of Lilly; the Defendants' argue that these records would be admissible as business records pursuant to Federal Rule of Evidence 803(6). Lilly argues that the requests fail the relevancy and specificity hurdles.

---

[4] For the purposes of this Entry, all subpoena numbers refer to those requests that appear in the actual subpoena served on Lilly, found at docket number 3-1.

Notwithstanding Lilly's objections, the Court believes that the following requests meet the *Nixon* standard:

- B3: Lilly has already produced/will produce the bonus information, *see* dkt. no. 3-2; it only makes sense, therefore, for it to produce the method for which the bonuses were calculated. This is also specific: the Defendants want the policy as to how bonuses were calculated.

- B4: Records on deferred compensation, retirement benefits, and pension provisions fall into the same category as bonus information, which, as noted above, Lilly has already provided. The Court agrees that this could be used as exculpatory information. Again, this is also specific.

- B5-B6: The Court concurs that this information is relevant to help explain the internal working structure of Lilly. It is also specific: the Defendants want a list of departments at Lilly. These records should be produced for the time period of January 1, 2009 through May 31, 2013.

- B8: Policy on official travel is indeed relevant to this case as it is alleged that Defendant Cao traveled for improper purposes. Again, this is specific: the Defendants want Lilly's travel policy. These records should be produced for the time period of January 1, 2009 through May 31, 2013.

- B21-B22: The Court agrees that records reflecting agreements not to disclose scientific information are relevant to this case. They are also specific: the Defendants want any agreements they entered into promising to handle Lilly's scientific information in a certain way. Notwithstanding this, it appears to the Court that Lilly has produced all confidentiality agreements to date. *See* Lilly Reply at 16 n.4. However, requests B21 and B22 are not listed on the attachment containing "responsive documents previously produced." *See* dkt. no. 3-2.

- B27, B28, B29: These requests are relevant to allegations contained in the SSI—that Defendant Cao fraudulently hid his new employment from Lilly and that Li inappropriately communicated with Defendant Cao. Lilly argues that they are not specific because "these requests rest on mere guesswork." Lilly's Reply at 16. The Court disagrees; they are not based on guesswork, but rather, are specifically tailored requests to the allegations contained in the SSI. For example, it is alleged that Defendant Cao furthered "his scheme and artifice to defraud Lilly" by "conceal[ing] [the] fact" that he accepted a job offer from Company A. SSI ¶ 52. Thus, B27 requests Lilly policies that required Defendant Cao to inform Lilly of this fact.

The Court **GRANTS** Lilly's motion to quash, however, with respect to requests B23 and B24. It does not appear to the Court that the Defendants have "a more grounded belief" that pre-

2009 emails contain relevant, admissible information. *See* Cause No. 1-13-150-WTL-TAB, dkt. no. 167 at 3. Indeed, the Defendants recognize the "arbitrariness" in the year selection. *See* Defs.' Br. at 45. The Court understands the Defendants' desire to establish a pattern of permitted scientific disclosure, but it is not clear why using emails from 2009 through 2013 to accomplish that goal fails to suffice. At this time, emails dating back to 2006 need not be produced.[5]

The Court would like the address the following requests at the conference:

- B25-B26: These requests seek to place the Defendants in the role they had in the drug discovery and development process while employed with Lilly. The Court agrees that this is relevant; it is relevant to know in what capacity the Defendants worked at Lilly. It is, however, very concerned with the breadth of the request. As Lilly notes, "[t]hese requests effectively seek every documents associated with Defendants' work while at Lilly." Lilly Reply at 16.

- B30-B32: These requests all seek records of "Patrick Gorsuch, a Lilly employee whose forensic work appears to underlay" several allegations made in the SSI. Defs.' Br. at 48. The Defendants received an FBI memorandum of an interview of Gorsuch from the Government; these request seek more information on the analyses he completed. The Court agrees that this information is relevant and would be admissible. **As it appears that information relating to Gorsuch has been previously produced by the Government, the Government is ORDERED to respond to these requests on or before Wednesday, September 3, 2014.**

- B34: This request is for the last known contact information for forty-seven individuals—if they are not currently employed by Lilly—as they are potential defense witnesses. The Court is hesitant to order Lilly to provide this information without knowing its policy on how it handles past-employee information. Further, other than noting that these individuals are potential witnesses, the Court is unclear as to the relevancy of this information.

**C. Records of Eli Lilly and Company regarding information technology (C1-C27)**

This category of requests seeks Lilly's computer (and other technology) policies and records of forensic analyses performed on those items. The Court concurs with Lilly on many of

---

[5] There seems to be much debate over what format in which the emails need to be produced. The Court was under the—perhaps mistaken—assumption that the Defendants and the Government had resolved this issue. Nevertheless, the parties should work together to resolve this issue; it would be a topic the Court would entertain discussing at the conference.

the requests in this category; it is not clear how the following requests are relevant: C2, C3, C5, C6, C7, C9, C10, C11, C13, C14, and C26. Thus, the Court **GRANTS** the motion to quash with respect to those requests. The Court notes that the Defendants chose not to explain the relevancy of these requests claiming it as "a matter of attorney work-product." Defs.' Response at 52, 54. The Court understands that the Defendants do not want to disclose the intricacies of their planned defenses; nevertheless, without more information, the Court agrees that these requests must be quashed.

Lilly's motion to quash request C22 is also **GRANTED**. C21 seeks specific computer media that was returned by Defendant Cao in January 2012; this information appears to have been provided to the Defendants. *See* dkt. no. 3-2 at 3. C22 seeks records reflecting any analyses that were ran on these items. The problem is that the Defendants fail to state the relevancy of this information; rather, as Lilly notes, they simply "explain the information they seek[.]" Lilly Reply at 19.

That said, the Court believes these requests are valid:

- C4: Lilly's email policies are relevant as the SSI alleges email to be the chosen means to commit wire fraud. *See, e.g.*, SSI ¶ 39 ("Cao began forwarding Lilly authored papers to his personal e-mail address."). This is also specific: the Defendants seek to know the IT policy on personal email use while using a Lilly-owned computer. These records should be produced for the time period of January 1, 2009 through May 31, 2013.

- C8: Similarly, Lilly's policies on downloading, transferring, and emailing Lilly property is highly relevant to this case. The SSI alleges that the Defendants fraudulently emailed/downloaded/transferred Lilly property. Again, this is specific: the Defendants seek Lilly's IT policy on performing such acts. These records should be produced for the time period of January 1, 2009 through May 31, 2013.

- C18-C19: These requests relate directly to allegations in the SSI—that Cao connected and downloaded certain items to an external hard drive. The Court agrees that this information is therefore relevant. In response to Lilly's concerns with the time frame, the Court orders the requests to be changed to "any time between January 1, 2009 and January 31, 2012."

8

The Court would like to address the following requests at the conference:

- C15: This request seeks the last known contact information for individuals employed in Lilly's security department involved in any internal investigation of either Defendant during the years 2001-2013. As indicated above, the Court would like to discuss this request, and its relevancy, and the conference.

- C16-17; C20:[6] Similar to requests B30-B32, these requests all seek information on the Gorsuch forensic analyses that took place in April 2012. **As it appears that information relating to Gorsuch has been previously produced by the Government, the Government is ORDERED to respond to these requests on or before Wednesday, September 3, 2014.**

D. **Records of Eli Lilly and Company regarding certain internal practices (D1-D51)**[7]

This category of requests seek various internal policies of Lilly; accordingly, the Defendants argue that they will be admissible as business records. Many of these requests are valid:

- D1, D3, D5, D7: These requests seek specific Lilly policies and/or programs regarding how scientific information is handled—"Team Lilly"; "Competitive Intelligence"; "Protect Lilly"; and "Open Innovation Drug Discovery." These policies are directly relevant to Lilly's policies on information sharing. Moreover, they are specifically identified and, as modified, only seek the "purpose or mission" of each policy and any changes they effected on Lilly's "handling, storage, protection, procurement, or disclosure of scientific information and data." Defs.' Br. at 54-56. Lilly objects to this request because the Defendants use the phrase "on information and belief" arguing that therefore, the Defendants' requests are speculative. The Court disagrees. The policies are specifically identified, and their names reveal their relevancy.

- D24, D25, D26, D27, D30, D38, D39, D44, D45, D46: These requests all seek relevant Lilly policies. As the Court indicated at the May 19, 2014, hearing, the Defendants are entitled to this information. The policies are specifically identified

---

[6] Request C20, present in the subpoena served on Lilly, did not appear in the Defendants' brief. It requests the following: "any records or data used or examined by Patrick (Butch) M. Gorsuch in connection with his investigation and/or reporting of computer or user activities regarding defendant Guoqing Cao." The relevancy and admissibility of this information has been explained elsewhere in the Defendants' brief. See Defs.' Br. at 28-29; 47-48. Accordingly, the request has not been waived.

[7] Request D37 was duplicative of request D40; Lilly was told to "disregard" request D37. See Defs.' Br. at 59.

9

and are relevant; for instance, Lilly's "Company Policy on Asset Protection" is highly relevant to this case which involves alleged fraudulent activity involving Lilly's assets.

- D48 and D49: These requests seek Lilly's "Scientific Disclosure Plans" and any "Scientific Disclosure Approval forms" submitted by the Defendants. Lilly objects, arguing that these requests are overbroad; this is alleviated, however, by changing the time period to be "between January 1, 2009 and May 31, 2013." The Court agrees with the Defendants that this information is relevant.

- D51: This request seeks Lilly's email and document retention policy. This is a valid request given that much discovery, including a great amount of emails, is being produced by Lilly. This is also specific. The Court orders the request to be changed to "at any time during the period from January 1, 2009 to May 31, 2013."

The Court, however, **GRANTS** Lilly's motion to quash with respect to the following requests:

- D50: This request seeks information that Lilly received from applicants seeking positions in its research and development department. Regardless of the concern the Court has with ordering Lilly to produce applicants' resumes, the basis for this request is speculative.

- D9 and D10: These requests seek material regarding the "Lilly-China Access Group"; this group was the subject of a lawsuit brought by the Securities and Exchange Commission for violations of the Foreign Corrupt Practices Act. The rationale for this request is to "establish[] Lilly's 'unclean hands' in relation to expanding its own footprint in the China market through illegal activity." Defs.' Br. at 62. The Court agrees with Lilly that this is not relevant.

The Court would like to discuss the following requests at the conference:

- D2, D4, D6, D8: These requests seek the contact information for former Lilly employees who were responsible for certain policies. As has been indicated above, the Court would like to discuss this further.

- D11: This request seeks any records illustrating any disciplinary actions taken against other for committing the same acts as the Defendants. The rationale for this request is to "show the disparate treatment accorded these Asian-American defendants [.]" *Id*. This "selective prosecution" theory is a topic the Court would like to discuss at the conference.

- D12 and D13: The Defendants seek the identification of databases which stored scientific information in order to show the jury the differences in security afforded each one. They also seek various information about each database, including the Defendants' activates with regard to these databases. The Court agrees that this

information may indeed be relevant, but is concerned about the breadth of the request, especially request D13.

- D14 and D15: These requests seek material gathered by Lilly regarding research and development conducted by other pharmaceutical companies. The Defendants note that information is relevant to an understanding of the typical information shared between pharmaceutical companies. The Court would like to discuss the relevancy of this topic at the conference.

- D16: This request seeks information on the Defendants' access to certain Lilly databases and computers. The Defendants note this information is relevant to show that they did not improperly access databases containing secret or proprietary Lilly data. The Court would like to discuss the relevancy of this topic at the conference.

### E. Records of Eli Lilly and Company – alleged Eli Lilly trade secrets and proprietary/confidential information (E1-E36)

This category seeks various Lilly records; the requests would be admissible as business records. A few of these requests are valid:

- E1 and E23: The Court agrees that confidentiality agreements pertaining to the scientific information at issue in the underlying criminal case and/or methods Lilly took to preserve and maintain confidentiality of such information is relevant. These records would be admissible as business records of Lilly

With regard to the following category E requests, Lilly's motion to quash is **GRANTED**.

- E3-E4: The rationale for seeking these requests is to show that "that the initial 'trade secret' characterizations were unsupported and reflected a misguided and misled investigation." Defs.' Br. at 74. This is speculative and hints at a "fishing expedition" inappropriate for a Rule 17 subpoena.

- E5-E21: These requests mirror various statements made in the first superseding indictment which charged the Defendants with theft of trade secrets. The Defendants argue that "it is relevant to determine if these statements were true when made and whether Lilly actually observes these steps, or if this is fiction." Defs.' Br. at 74. The speculative nature of these requests, again, is not appropriate in a Rule 17 subpoena.

- E24-E29: These requests seek whether or not certain drugs—developed by Lilly based on the subject scientific information that the Defendants disclosed—achieved certain "milestone events." The Defendants do not explain how this information is relevant, other than to say "[i]t is relevant for the jury to know whether or not the purportedly valuable "Lilly Property" . . . succeeded in achieving any of these statuses." Defs.' Br. at 75. This does not explain *why* it is relevant for a jury to know this information.

11

- E35-E36: Similar to requests E24-E29, the Defendants make no attempt to explain the relevancy of this information.

The Court would like to discuss the following requests at the conference:

- E2: This request seeks the contact information for former Lilly employees. As has been indicated above, the Court would like to discuss this further at the conference.

- E30: This request seeks Lilly records of efforts taken to search for research and development being conducted by other pharmaceutical companies. Like requests D14 and D15, the Court would like to discuss the relevancy of this topic at the conference.

- E31-E34: These requests seek various records in order "to determine if Lilly itself made disclosures of what it asserts now is trade secret/confidential/proprietary." Defs.' Br. at 75-76. The Court agrees that this information is relevant and would be admissible; it is, however, concerned with its breadth.

### F. Records of Eli Lilly and Company – alleged loss/harm to Eli Lilly (F1-F13)

The records sought in this category relate to the alleged loss or harm Lilly has suffered as a result of the disclosure. Lilly argues that "[t]his information is not relevant at the guilt phase of the trial." Lilly Reply at 25. The Defendants, however, correctly note that an element of their wire fraud charges is an intent to defraud which "requires a wilful act by the defendant with the specific intent to deceive or cheat, usually for the purpose of getting financial gain for one's self or causing financial loss to another." *United States v. White*, 737 F.3d 1121, 1130 (7th Cir. 2013). The Court agrees, therefore, that some of this information is relevant and admissible.

The following request are valid:

- F1-F2: Lilly has specifically used the $55 million figure in connection with the development of the disclosed scientific information at issue in the case. The Court concurs with the Defendants that the amount of loss alleged in this case—$55 million—is relevant to their charges and would be admissible as business records.

- F3-F4: These requests correlate to the SSI's allegation that "[t]he unauthorized disclosure of Lilly's strategic focus and research and development process impedes

12

Lilly's ability to advance to commercialized medicines for patient use." SSI ¶ 2. As noted above, this information is relevant to Lilly's financial loss.

Lilly's motion to quash is **GRANTED** with respect to the requests (F5-F10). These requests seek a wide swath of records for which the Defendants fail to explain their relevancy.

The Court would like to address the following requests at the conference:

- F11-F13: These requests seek any communications Lilly representatives have made about the underlying criminal matter, both public communications and internal communications. The Court agrees that this information is relevant, but is concerned about its breadth.

### G. Email exchanges between Lianshan Zhang and other Lilly employees (G1-G3)

These requests seek emails exchanged between Individual #1 and certain former or current Lilly employees, any disciplinary action taken against those employees for such communications, and their contact information. The Defendants received a summary of emails between the listed individuals and Individual #1 from the Government. The Defendants argue that the emails "reflect[] a sharing of basic scientific information indistinguishable from that charged in this case, yet those other Lilly employees have not only gone uncharged but, we suspect and seek by this request to determine, have gone unpunished[.]" Defs.' Br. at 80. They then want to present this evidence to show "the selective prosecution of these defendants." *Id*. at 79.

It appears to the Court that G1 has already been produced. The Court would like to discuss requests G2 and G3 at the conference.

### H. Eli Lilly's China-related activities (H1-H12)[8]

The Defendants allege that these requests seek "records relating to very limited aspects of Lilly's information-security procedures in China, since they are relevant to the charged activity."

---

[8] Request H9 was voluntarily withdrawn. *See* Defs.' Br. at 86.

13

Defs.' Br. at 85. The Defendants note that Defendant Li was employed by Lilly-China during part of the relevant time period as alleged in the SSI. Accordingly, the Court agrees that if Lilly-China had different information-security procedures than Lilly-Indianapolis, that information would be relevant and admissible as business records. Thus, the Court finds requests H1(a)[9] and H2 to be valid.

It seems, however, that those are the only requests in category H that do in fact, relate to "information-security procedures." Requests H3-H8 seek records of collaboration between Lilly and China-based entities; yet, the Defendants fail to explain how this information is relevant. Accordingly, Lilly's motion to quash is **GRANTED** with respect to those requests. Similarly, Lilly's motion with respect to request H12 is also **GRANTED**. The Court concurs with Lilly that this request is unnecessarily overbroad.

The Court would like to discuss the relevancy of requests H10-H11 at the conference. These requests seek certain collaborations and/or meetings held between Lilly and Jiangsu Hengrui Medicine.

### I. Employment-related allegations (I1-I6)

Lilly's motion to quash these requests is **GRANTED**. The Defendants themselves essentially admit that they are on a fishing expedition: "*On information and belief*, Lilly exercised discrimination in assignments and promotion in a manner which disfavored Asian-

---

[9] Request H1(b) seeks the following "policies, practices, guidance or warnings . . . concerning . . . any communications, by any means, with representatives of non-pharmaceutical companies in China." Inasmuch as Li is alleged to have communicated with Cao when he *was* employed by a pharmaceutical company, the Court does not see the relevancy in Lilly-China's policy on communications with non-pharmaceutical companies. The Defendants do not attempt to explain the relevancy, and only address request H1(a) in their Response. *See* Defs.' Br. at 85 ("[T]hese requests seek materials . . . regarding communications with representatives of *other pharma companies* (H1) . . .") (emphasis added). Lilly's motion to quash request H1(b) is therefore **GRANTED**.

Americans such as Cao." Defs.' Response at 87 (emphasis added). The Court is skeptical of the relevancy of these requests; nevertheless, Rule 17(c) subpoenas "must be made in good faith and [are] not intended [to be] a general 'fishing expedition.'" *Tokash*, 282 F.3d at 971. The Defendants have not cleared the *Nixon* hurdles with respect to this category of requests.

### III.   CONCLUSION

For the foregoing reasons, Lilly's motion to quash subpoena (dkt. no. 3) is **GRANTED IN PART**. For those requests that are not quashed, Lilly shall produce the requested material to the Defendants as indicated in the subpoena **on or before Wednesday, September 17, 2014**.

SO ORDERED:
   8/25/2014       .

_William T. Lawrence_
Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic no

**Copies to:**

**Alain Leibman, counsel for Guoqing Cao**
**aleibman@foxrothschild.com**

**Matthew Adams, counsel for Guoqing Cao**
**madams@foxrothschild.com**

**Scott Newman, counsel for Shuyu Li**
**scott@scottnewmanlaw.com**

15